# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: August 11, 2026

| | | |
|---|---|---|
| IAN BRUENING, | * | UNPUBLISHED |
| Petitioner, | * | No. 23-422V |
| v. | * | Special Master Nora Beth Dorsey |
| SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent. | * | Dismissal Decision; Order to Show Cause; Failure to Prosecute; Insufficient Proof. |

Emily Beth Ashe, Anapol Weiss, Philadelphia, PA, for Petitioner.
Lauren Kells, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION[1]

## I. INTRODUCTION

On March 27, 2023, Ian Bruening ("Petitioner") filed a petition for compensation in the National Vaccine Injury Program, 42 U.S.C. § 300aa-10 et seq. (2018).[2] Petitioner alleged he suffered the Table injury of Guillain-Barré syndrome ("GBS") as a result of an influenza ("flu") vaccine administered on or about November 16, 2020. Petition at Preamble (ECF No. 1).

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018) ("Vaccine Act" or "the Act"). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

Based on the reasons set forth below and in the Order to Show Cause dated December 10, 2025, the undersigned **DISMISSES** this case for failure to prosecute and insufficient proof.

## II. BACKGROUND

### A. Procedural History

On March 27, 2023, Petitioner filed his petition. Petition. Between March 2023 and April 2023, Petitioner filed medical records and an affidavit in support of his claim. Petitioner's Exhibits ("Pet. Exs.") 1-13. The case was then assigned to the special processing unit ("SPU"). Activation and Reassignment Order dated Aug. 10. 2023 (ECF No. 15).

On July 17, 2024, Respondent filed his Rule 4(c) report, arguing against compensation. Respondent's Report ("Resp. Rept.") at 1 (ECF No. 23). Respondent argued Petitioner failed to demonstrate that he suffered "the residual effects or complications" of his alleged GBS "for more than six months after the administration of [his flu] vaccine," or underwent "inpatient hospitalization and surgical intervention." Id. at 6-7 (citing § 11(c)(1)(D)(i), (iii)). Thus, Petitioner did not meet the severity requirements of the Vaccine Act. Id. Respondent also argued that Petitioner's onset of GBS occurred outside the three to 42 day period applicable to a GBS Table claim. Id. at 7-8 (citing 42 C.F.R. § 100.3(a)(XIV)(D)). Accordingly, Respondent requested the petition be dismissed. Id. at 8.

Considering the issues raised by Respondent, and after a preliminary review of Petitioner's medical records, the Chief Special Master issued an Order to Show Cause. Order to Show Cause dated Dec. 10, 2025, at 1-2 (ECF No. 25). The Chief Special Master preliminarily concluded Petitioner "more likely than not had recovered from his GBS in less than six months following the administration of his vaccination" and his "GBS symptoms likely began before the administration of the flu vaccine on November 16, 2020." Id. at 3, 4. He directed Petitioner:

> to file any additional evidence demonstrating he suffered the sequela of his of GBS for more than six months, suffered the onset of his GBS within [three to 42] days following his November 16, 2020 vaccination and Show Cause, on or before Friday, January 9, 2025, why his GBS case should not be dismissed.

Id. at 6. Petitioner requested and received additional time to comply with the Order to Show Cause. See Pet. Motion for Extension of Time, filed Jan. 6, 2026 (ECF No. 26) (reporting counsel was unable to confer with Petitioner "despite significant outreach").

Petitioner did not file any additional evidence. Instead, on January 14, 2026, Petitioner filed a status report stating "no additional evidence exists to submit at this time." Pet. Status Rept., filed Jan. 14, 2026 (ECF No. 27).

On April 27, 2026, the case was reassigned out of SPU to the undersigned. Notice of Reassignment dated Apr. 27, 2026 (ECF No. 33).

This matter is now ripe for adjudication.

### B. Relevant Medical History[3]

Petitioner was twenty-five years old when he received an intramuscular flu vaccination in his left deltoid on, or around, November 16, 2020.[4] Pet. Ex. 1 at 1; see also Pet. Ex. 10 at 2.

On November 21, 2020, approximately five days post-vaccination, Petitioner presented to WellStar North Fulton Hospital emergency department ("ED") complaining of dizziness, an unsteady gait, and joint pain. Pet. Ex. 2 at 11. Petitioner described his symptoms as "shakiness, aching joints, lightheadedness, palpitations and wobbly gait," which started that day. Id. at 13. At this visit, Petitioner acknowledged a history of abuse of alcohol and reported a five-month history of drinking three to five alcoholic beverages per day. Id. He reported drinking five alcoholic beverages the day before reporting to the ED. Id. at 19. Upon physical examination, Petitioner's gait was slow and slightly ataxic, and he had a mild hand tremor. Id. at 14. A chest X-ray revealed normal results. Id. at 18. Petitioner was treated with intravenous ("IV") fluids, Ativan, and a Librium taper. Id. at 14, 18. After treatment, his dizziness and hand tremor improved. Id. at 18, 21. He was diagnosed with alcohol withdrawal syndrome and discharged. Id. at 19. Petitioner was provided a referral for alcohol treatment and said he would make an appointment with his primary care provider ("PCP"). Id.

On November 23, 2020, Petitioner presented to Sawnee Mountain Urgent Care and Malcolm P. Dulock, M.D. Family Practice to "[e]stablish [a] new PCP" and for "sinus issue[s]/balance." Pet. Ex. 3 at 104, 106, 122. Petitioner reported having alcohol withdrawals and admitted to drinking three to five times a day. Id. at 122. He reported going to the ED and being provided medication for alcohol withdrawal and nausea. Id. Addressing Petitioner's complaint of dizziness, the history of present illness noted the "most recent attacks" occurred three days prior, and Petitioner's symptoms were unsteadiness and weakness. Id. at 123-24. Petitioner reported his symptoms were worse in the evening and "[felt] like getting out of a boat at sea." Id. at 123. Petitioner also reported sinus issues which had began one to two weeks prior. Id. at 124. Dr. Dulock's assessment was acute sinusitis, alcohol dependence, and medication monitoring. Id. Dr. Dulock noted that Petitioner was "having alcohol withdrawals" and prescribed Cipro and Zyrtec for Petitioner's acute sinusitis. Id. At this visit, Dr. Dulock also administered a dexamethasone (steroid) injection. Id.

---

[3] This medical history is largely taken from Respondent's Rule 4(c) report as the undersigned finds the Rule 4(c) report provided an accurate representation of the records. See Resp. Rept. at 2-5.

[4] The medical records, petition, and Petitioner's affidavit give conflicting dates of vaccination. Petitioner's vaccine record from the Georgia Registry of Immunization Transactions and Services states the flu vaccination was administered on November 16, 2020. Pet. Ex. 1 at 1; see also Petition at Preamble. However, Petitioner's pharmacy record from CVS states that the vaccine was administered on November 17, 2020. Pet. Ex. 10 at 2; see also Pet. Ex. 12 at ¶ 4 (affidavit). This discrepancy is not dispositive. For purposes of this Decision, the undersigned will assume Petitioner received his vaccination on November 16, 2020.

On November 28, 2020, approximately 12 days after vaccination, Petitioner was admitted to Emory Johns Creek Hospital ED complaining of muscle weakness that began two weeks prior when he noticed he "couldn't walk properly." Pet. Ex. 4 at 86. The history of present illness noted that Petitioner reported that the onset of his symptoms started "about [two] weeks ago, before he received a flu shot." Id. at 156 (emphasis added). His symptoms "started out as a numbness and tingling in his feet, this progressed to weakness in his feet and calves, then to his hands along with the numbness and tingling." Id. He reported an unsteady gait and feeling off balance. Id. Petitioner reported tingling and numbness to the plantar aspects of the feet and fingers. Id. at 86. He expressed having pain when extending his fingers. Id. Petitioner stated he only took three doses of his Librium prescription then stopped the medication. Id. He said after the Cipro and steroid shot given by his PCP on November 23, 2020, he was able to walk. Id.

On examination, Petitioner showed a stiff gait, decreased motor strength, and absent bilateral knee, ankle, and radial brachialis reflexes. Pet. Ex. 4 at 88-89. Petitioner underwent a lumbar puncture, chest X-ray, head computed tomography ("CT"), electrocardiogram ("EKG"), and five days of intravenous immunoglobulin ("IVIG") while at Emory. Id. at 18-19, 84, 93-94, 162. The X-ray and head CT were normal. Id. at 93-94. The EKG showed sinus tachycardia. Id. at 162. Magnetic resonance imaging ("MRI") of the spine was unremarkable and showed no demyelinating lesions. Id. at 222. Petitioner was discharged on December 3, 2020, with normal strength and decreased sensation to fine touch in his lower extremities. Id. at 125. On discharge, he stated he was eating well and felt "great." Id. at 203. On the ED physician report, GBS was included as a possible differential diagnosis. Id. at 89. Discharge documentation noted Petitioner was diagnosed with GBS by neurology based on absent reflexes and decreased sensation. Id. at 124. Petitioner's discharge diagnoses were: GBS, hyponatremia, abnormal liver enzymes, elevated blood pressure, B12 deficiency, folate deficiency, tobacco abuse, alcohol abuse, and alcohol withdrawal. Id. at 123.

On December 8, 2020, Petitioner returned to Dr. Dulock for a post-hospitalization follow-up. Pet. Ex. 3 at 42, 118. Upon a review of his symptoms, Petitioner reported muscle weakness. Id. at 119. Dr. Dulock's assessment was bilateral upper and lower extremity weakness; he prescribed Neurontin 100mg and ordered physical therapy ("PT") and occupational therapy ("OT"). Id. at 120. Dr. Dulock diagnosed Petitioner with GBS and advised Petitioner to follow up as needed. Id. 118, 120.

On December 11, 2020, Petitioner presented to Results Physiotherapy for an initial evaluation. Pet. Ex. 7 at 2. The therapist noted that Petitioner's weakness and incoordination started with walking and began "a month ago" and that he was unable to walk more than one hundred feet with a walker and more than twenty-five feet unassisted. Id. The therapist recommended three weekly PT sessions for two months. Id. at 5. Petitioner attended twenty-eight sessions of PT from December 11, 2020, through March 19, 2021. See id. at 2-89.

On December 29, 2020, Petitioner saw neurologist Vita G. Kesner, M.D., for a telehealth visit. Pet. Ex. 3 at 82. Petitioner reported that in "the middle of November" he noticed weakness in his legs that progressed to his hands and caused imbalance and numbness in his hands and feet. Id. He reported his symptoms began "about [two] weeks after [the] flue [sic] shot." Id. Petitioner reported residual numbness in his hands and feet but noted improved strength and

balance. Id. at 83. Dr. Kesner's assessment was that Petitioner presented with a clinical presentation of GBS "(onset symptoms [two] weeks after flue [sic] shot) – progressive ascending numbness, weakness[, positive cerebrospinal fluid] with mild protein elevation [without] pleocytosis." Id. Dr. Kesner noted that Petitioner showed "remarkable improvement after IVIG but still remain[ed] symptomatic." Id. at 83-84. She informed Petitioner his illness was a "monophasic process," and continued improvement was expected. Id. Dr. Kesner noted that "16% [of] patients with CIDP have an acute onset [of] symptoms," and advised Petitioner to monitor his symptoms. Id. She also noted that "[t]hiamine deficiency and ETOH [i.e. alcohol] toxicity can also contribute to [Petitioner's] neuropathy." Id. at 84. Dr. Kesner recommended continued PT, OT, and taking vitamin B12. Id. Dr. Kesner also counseled Petitioner on alcohol cessation and the risk of neuropathy. Id. Petitioner was also provided with a referral to Emory for his insomnia. Id. Dr. Kesner sent Petitioner's PCP a note to repeat his labs. Id.

At a February 5, 2021 PT visits, Petitioner's therapist noted Petitioner required a "quad cane" for stairs and uneven surfaces. Pet. Ex. 7 at 50. However, Petitioner had made "excellent gains in hip strength, gait speed, and grip strength." Id. at 52. A March 3, 2021 PT record noted Petitioner continued to a reduced range of motion in finger extension on both hands. Id. at 79.

On March 19, 2021, Petitioner was discharged from PT. Pet. Ex. 7 at 86. His overall condition was described as "improving" and his perceived improvement was 80%. Id. Petitioner had met his PT treatment goals. Id. at 88-89. Petitioner was advised to continue an independent home exercise program. Id. at 89.

Petitioner was hospitalized at Emory Johns Creek Hospital from June 18, 2021, through June 19, 2021, for alcoholic hepatitis. Pet. Ex. 3 at 75. Petitioner presented with abdominal distention and left-sided abdominal wall redness and tenderness around a small scab on his abdomen. Id. He underwent an ultrasound-guided paracentesis that provided significant improvement in his abdominal pain. Id. Petitioner reported he stopped drinking three weeks before this hospitalization and understood the need to completely abstain from alcohol consumption. Id. He was prescribed Prednisone, Cefuroxime, Doxycycline, and Furosemide on discharge. Id. Elena Belykh, M.D., noted that Petitioner's neurology examination was "grossly intact" and advised Petitioner to follow up with gastroenterology specialist Long Nguyen, M.D., in one to two weeks. Id. at 75-76. The discharge record did not mention GBS sequelae.

On June 29, 2021, Petitioner returned to his PCP for an adult health examination. Pet. Ex. 3 at 36, 114. Dr. Dulock noted "[a]lcohol dependence" and "Guillain-Barre syndrome – [o]nset: 12/08/20" under the problems section of this visit record. Id. at 39, 115. The medications list included gabapentin which was noted as filled on February 12, 2021. Id. A visit summary listed gabapentin 100mg as a current medication. Id. at 38. The summary noted Petitioner was directed to take one capsule by mouth, three times daily. Id. There was no other mention of GBS, or any symptoms related to GBS, and no physical examination notes. See id. at 36-39, 114-17. Dr. Dulock's assessment/plan did not address GBS. See id. at 115-16.

On September 7, 2021, Petitioner returned to his PCP to complete a physical examination for clearance to take emergency medical technician ("EMT") classes. Pet. Ex. 3 at 111. Dr. Dulock cleared Petitioner and completed the form for his EMT class admission. Id. at 74, 112.

Dr. Dulock again noted "[a]lcohol dependence" and "Guillain-Barre syndrome – [o]nset: 12/08/20" under the problems section of this visit record. Id. at 111. The medication list no longer included gabapentin. Id. Dr. Dulock did not mention GBS, or any symptoms related to GBS again in the visit record. See id. at 111-13. No physical examination or review of symptoms was recorded in the visit note. Id. On the EMT form, Dr. Dulock checked the no box for "[d]o abnormalities appear in any of the following systems?" which included Musculoskeletal and neurological systems. Id. at 74, 111-113. Moreover, Dr. Dulock listed "[n]o special recommendations" under the section asking about the health or physical limitations of the student while participating in the EMT program. Id. at 74.

No subsequent medical records were filed.

### C. Petitioner's Affidavit

On April 13, 2023, Petitioner filed an affidavit. Pet. Ex. 12. Petitioner stated he received a flu vaccine on November 17, 2020. Id. at ¶ 4. He averred that he presented to North Fulton Hospital on November 21, 2020 with "shakiness, aching joints, lightheadedness, palpitations and wobbly gait" that began that "same day." Id. at ¶10. He was diagnosed with alcohol withdrawal syndrome and discharged home. Id.

Petitioner's affidavit then largely recounted his clinical course as described above. See Pet. Ex. 12 at ¶¶ 10-24. Petitioner stated that at the time of his discharge from PT, on March 19, 2021, he "required a quad cane to ambulate on stairs and uneven surfaces." Id. at ¶ 13. He averred he continued to use a quad cane until June 2021. Id. Petitioner asserted he discussed his "continuing GBS symptoms" with Dr. Dulock at his June 29, 2021 appointment. Id. at ¶ 24. Petitioner averred that he "continued taking 100mg of gabapentin three times per day for ongoing tingling and pain in [his] feet and finger" at that time. Id. Additionally, Petitioner reported he was "out of work until August 2021" due to his GBS. Id. at ¶ 25.

Finally, Petitioner stated that, as of April 13, 2023 affidavit, he continues to experience "an increased sensitivity to pain in [his] feet and fingertips." Pet. Ex. 12 at ¶ 25.

## III. DISCUSSION

When a petitioner fails to comply with court orders to prosecute his case, the court may dismiss the case. Sapharas v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Hum. Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993); Vaccine Rule 21(c); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990) (affirming dismissal of case for failure to prosecute for counsel's failure to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of cases for failure of party to respond to discovery requests).

Vaccine Program cases that have been dismissed for failure to respond to an Order to Show Cause include but are not limited to: Byrd v. Sec'y of Health & Hum. Servs., 778 F. App'x 924 (Fed. Cir. 2019); Ghasemipor v. Sec'y of Health & Hum. Servs., No. 20-17V, 2020 WL 7497878 (Fed. Cl. Spec. Mstr. Nov. 23, 2020); Flores v. Sec'y of Health & Hum. Servs., No. 20-157V, 2020 WL 5798502 (Fed. Cl. Spec. Mstr. Sept. 2, 2020); Button ex rel. W.S.B. v. Sec'y of

Health & Hum. Servs., No. 16-1391V, 2017 WL 2876099 (Fed. Cl. Spec. Mstr. June 5, 2017); Duncan v. Sec'y of Health & Hum. Servs., No. 16-1367V, 2020 WL 6738118 (Fed. Cl. Spec. Mstr. Oct. 19, 2020), mot. for rev. denied, 153 Fed. Cl. 642 (2021).

Here, Petitioner was advised that his case could not proceed without additional evidence demonstrating he suffered the sequela of his of GBS for more than six months and that he suffered the onset of his GBS within three to 42 days following his November 16, 2020 vaccination. Petitioner failed to file any additional evidence in response to the Order to Show Cause. Instead, Petitioner filed a status report conceding that "no additional evidence exists to submit at this time." Pet. Status Rept., filed Jan. 14, 2026 (ECF No. 27). Thus, the undersigned finds it appropriate to dismiss the case for failure to prosecute and insufficient proof of post-vaccination onset.[5]

Moreover, to receive compensation through the Program, Petitioner must prove either (1) that he suffered a "Table Injury"—i.e., an injury listed on the Vaccine Injury Table—corresponding to a vaccine that he received, or (2) that he suffered an injury that was actually caused by a vaccination. See §§ 11(c)(1), 13(a)(1)(A); Capizzano v. Sec'y of Health & Hum. Servs., 440 F.3d 1317, 1319-20 (Fed. Cir. 2006). Here, Petitioner primarily seeks to establish a Table claim. The Vaccine Table sets forth the time period in which the first symptom or manifestation of onset must occur in Table claims. 42 C.F.R. § 100.3(a)(XIV)(D). For a GBS Table claim, onset must occur between three and 42 days after flu vaccination. Id. A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding his claim. § 13(a)(1)(A). Further, a petitioner cannot establish entitlement to compensation based solely on his assertions; rather, a vaccine claim must be supported either by medical records or by the opinion of a medical doctor. Id.

Petitioner is unable to establish that his GBS onset occurred between three and 42 days based on the current record. Instead, contemporaneous medical records support that Petitioner's GBS onset occurred prior to his flu vaccination on November 16, 2020.

On November 21, 2020, Petitioner was seen at an ED for dizziness as well as "shakiness, aching joints, lightheadedness, palpitations, and a wobbly gait" which he stated began that day. Pet. Ex. 2 at 13. He was diagnosed with alcohol withdrawal syndrome and discharged. On November 23, 2020, Petitioner was seen by his PCP where he reported he was "unsteady and weak." Pet. Ex. 3 at 124. His PCP assessed Petitioner with acute sinusitis and alcohol dependence.

---

[5] In the Order to Show Cause, the Chief Special Master concluded, based on the current record, that "[w]hile Petitioner may have experienced some minor residual symptoms on his discharge from physical therapy on March 19th, he more likely than not had recovered from his GBS in less than six months following the administration of his vaccination." Order to Show Cause at 3. The undersigned makes no factual determination on whether Petitioner satisfies the six-month severity requirement set forth by the Vaccine Act as the petition can be dismissed on other grounds. She notes, however, that Petitioner's medical records and affidavit suggest he continued to be treated with gabapentin through June 29, 2021—more than six months after vaccination.

On November 28, 2020, Petitioner presented to the ED with upper and lower weakness. A history of the present illness noted Petitioner reported that the onset of his symptoms started "about [two] weeks ago, before he received a flu shot" (i.e., November 14, 2020). Pet. Ex. 4 at 156 (emphasis added). Further, Petitioner reported his symptoms began as numbness and tingling in the feet which progressed to weakness and an unsteady gait. Petitioner was admitted and treated with five days of IVIG. At discharge, Petitioner's differential diagnosis included GBS.

The November 28, 2020 medical records explicitly place the onset of GBS symptoms (numbness and tingling) before flu vaccination. While Petitioner had two medical encounters after vaccination and before his November 28, 2020 hospitalization, these are the first records that contemplate a diagnosis of GBS and the first records that discuss Petitioner's initial symptoms of numbness and tingling, symptoms that are consistent with the initial manifestation of GBS. Additionally, at his first PT evaluation, on December 11, 2020, the therapist noted Petitioner's weakness and incoordination began "a month ago" (i.e., around November 11, 2020).

The undersigned acknowledges that a later visit to Dr. Kesner, on December 29, 2020, noted Petitioner reported his symptoms began two weeks after a flu vaccine. However, at the same visit, Petitioner also reported his symptoms had begun in "the middle of November." Pet. Ex. 3 at 82. This record is internally inconsistent as it reports an onset of both two weeks after the flu vaccine (approximately November 30 or December 1, 2020) and an onset of mid-November.

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. See Burns v. Sec'y of Health & Hum. Servs., 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records, "in general, warrant consideration as trustworthy evidence." Cucuras v. Sec'y of Health & Hum. Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). But see Kirby v. Sec'y of Health & Hum. Servs., 997 F.3d 1378, 1382 (Fed. Cir. 2021) (rejecting the presumption that "medical records are accurate and complete as to all the patient's physical conditions").

The record, as it stands, supports an onset of symptoms prior to vaccination in mid-November 2020. Further, the undersigned finds the November 28, 2020 medical records provide a detailed history of Petitioner's symptoms and place Petitioner's GBS onset before his flu vaccination.

Accordingly, Petitioner is unable to establish that onset of GBS occurred within three and 42 days after flu vaccination, he cannot establish a GBS Table claim. Further, while Petitioner alleged a Table claim, the undersigned finds that Petitioner could not succeed on a causation-in-fact claim given Petitioner has not established onset of GBS occurred after receipt of the flu vaccination.

## IV. CONCLUSION

The undersigned extends her sympathy to Petitioner for the pain and suffering he has experienced. The undersigned's Decision, however, cannot be decided based upon sympathy, but rather on the evidence and law.

Accordingly, this case is **DISMISSED** for failure to prosecute and insufficient proof. In the absence of a timely filed motion for review pursuant to Vaccine Rule 23, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master